UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| PAUL NOLAN, | ) | |
| | ) | |
| Defendant/Petitioner, | ) | |
| v. | ) | CRIMINAL NO. 05-10340-NMG |
| | ) | CIVIL NO. 10-11280-NMG |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION ON MOTION
## TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

May 11, 2012

DEIN, U.S.M.J.

## I.  INTRODUCTION

On May 10, 2007, the defendant/petitioner, Paul Nolan, pled guilty to two counts

of bank robbery in violation of 18 U.S.C. § 2113(a).  On August 18, 2007, he was

sentenced to 170 months of incarceration, a sentence which he is presently serving.  His

court-appointed appellate counsel filed a timely brief with the First Circuit pursuant to

Anders v. California, 38 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), certifying

that, after a review of the record and researching the applicable law, he found no non-

frivolous issues to be raised in the appeal.  On March 16, 2009, the First Circuit entered

judgment, agreeing that there were no non-frivolous issues on appeal.  The First Circuit

mandate issued on April 9, 2009.

This matter is presently before the court on Nolan's *pro se* motion, filed pursuant to 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his sentence. (Docket No. 31).[1] In his motion and supporting memoranda, Nolan contends that (1) trial counsel was ineffective, (2) appellate counsel was ineffective, and (3) that the prosecutor engaged in intentional misconduct during the trial which deprived him of his Fifth Amendment right to a fair trial. Nolan also has requested that the court appoint him counsel in connection with his habeas petition. (Docket No. 41). In addition to opposing the habeas petition on the merits, the government contends that it should be dismissed as untimely.

This court finds that the habeas petition may be considered timely filed given that it is dated and signed well within the statutory period. Nevertheless, that issue does not have to be finally resolved because, for the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Nolan's request for the appointment of counsel and his habeas petition be denied on the merits. No hearing is necessary.

## II.  STATEMENT OF FACTS

On December 14, 2005, Nolan was indicted by a grand jury sitting in Boston, Massachusetts, with robbing the federally insured Central Bank in Somerville, Massachusetts on September 23, 2005 (Count One), and with robbing the federally insured Charlestown Cooperative Bank in Charlestown, Massachusetts on October 3, 2005

---

[1] Docket entries are in Criminal Case No. 05-10340-NMG unless otherwise indicated.

(Count Two), both in violation of 18 U.S.C. § 2113(a).  In connection with the Charles-town robbery, Nolan also was indicted for carjacking, in violation of 18 U.S.C. § 2119 (Count Three), and with conspiracy to affect commerce by robbery, in violation of 18 U.S.C. § 1951.  (Count Four).  He was represented by court-appointed counsel from the Federal Defenders' Office, Oscar Cruz.  (Docket Entry 11/16/05).

Nolan entered into a plea agreement with the government, dated May 7, 2007 and signed on May 10, 2007, whereby, *inter alia*, he agreed to plead guilty to the two bank robbery counts, the government agreed to dismiss the other two counts, and the parties agreed that a sentence of 151 months incarceration and five years of supervised release was the appropriate disposition of the case.  (Docket No. 22).  Nolan appeared with counsel and pled guilty on May 10, 2007.  (Docket Entry 5/10/07).  He appeared with counsel for sentencing before Gorton, J. on August 8, 2007.  (Docket Entry 8/8/07).  At the sentencing, the Court notified Nolan that it would not accepted the plea agreement and gave him the option of withdrawing his plea.  (Id.).  The defendant waived his right to withdraw his guilty plea, and the Court sentenced him to 170 months in prison, three years of supervised release and restitution to the two banks in the amount of $7,283.50 and $12,548, respectively.  (Id.; Docket No. 23).

Nolan filed a timely appeal.  (Docket No. 24).  New appellate counsel was appointed, who filed a brief under Anders v. California, 38 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), certifying that, after a review of the record and researching the

applicable law, he found no non-frivolous issues to be raised in the appeal. On March

16, 2009, the First Circuit entered judgment, stating in part:

> Our review of the record, in particular the transcripts of the change
> of plea and sentencing hearings as well as the plea agreement, leads
> us to agree with counsel that there is no non-frivolous issue on
> appeal.

(Docket No. 30). The mandate issued on April 9, 2009. (Id.).

Nolan did not file any petition for certiorari with the United States Supreme Court,

and it is undisputed that the one year period in which a petition under 28 U.S.C. § 2255

was to be filed expired on June 15, 2010. On July 29, 2010, Nolan's § 2255 Motion and

supporting memorandum, both dated April 28, 2010, were entered on the docket of this

Court. (Docket Nos. 31, 32). In response to the government's request, on June 15, 2011

this Court ordered the defendant to submit evidence that he put his § 2255 pleadings in

the mail in a timely manner, or address why the doctrine of equitable tolling should

apply. Nolan subsequently responded by filing two letters addressed to the Court.

(Docket Nos. 39 and 41). In his later filing, Nolan also requested that he be appointed

counsel.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Timeliness

The government contends that Nolan's petition should be dismissed because it was not timely filed. As detailed herein, this court concludes that the question is a close one, and recommends that the petition be accepted as timely and addressed on the merits.

Under the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), a petitioner has one year from the date the judgment of conviction becomes final to file a petition under 28 U.S.C. § 2255. 28 U.S.C. § 2255(f). It is by now well established that "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction." Clay v. United States, 537 U.S. 522, 525, 123 S. Ct. 1072, 1076, 155 L. Ed. 2d 88 (2003). In the instant case, judgment was entered in the First Circuit on March 16, 2009 (Docket No. 30), and the deadline for filing a writ of certiorari expired 90 days later, on June 14, 2009. Since, however, that was a Sunday, the deadline was extended to June 15, 2009. See Sup. Ct. R. 30.1. Therefore, the defendant had one year from June 15, 2009, or until June 15, 2010, to file his habeas petition. In the case of a *pro se* prisoner like Nolan, his habeas petition is "deemed filed when submitted to prison authorities for mailing to the district court." Morales-Rivera v. United States, 184 F.3d 109, 110-11 (1st Cir. 1999).

## Facts Relating to the Filing

It is undisputed that Nolan's petition and supporting memorandum were dated April 28, 2010, but they were not docketed by the court until July 29, 2010, 44 days after the deadline for Nolan to have filed his habeas petition. In light of these facts, the government questioned whether Nolan had, in fact, deposited his pleadings with the

prison authorities in a timely manner. At the government's request, on June 15, 2011 this Court ordered the defendant to prove that he deposited the § 2255 petition with his institution in a timely manner, or to explain why equitable tolling should apply. Nolan was given 30 days to respond to the order. (See Docket Entry 6/15/11). On June 22, 2011, Nolan filed a change of address notice with the Court (Docket No. 37), and a copy of the Court's order was sent to him again. As detailed below, although he never expressly addressed the circumstances surrounding his mailing of his habeas petition, he did indicate that he had requested documentation which he had not received from the prison authorities. In addition, the facts the defendant has proffered indicate that he is requesting that the doctrine of equitable tolling be applied to allow his habeas petition to be considered on the merits.

Specifically, on July 11, 2011, Nolan sent a letter to the Court requesting an additional 60 days to respond to the government's contention that his petition was not timely. (Docket No. 39). Therein he explained that he had not received the Court's June 15th order until July 7th, and that he had recently been moved. He also explained that he had been having difficulty obtaining information he needed, including "records from the clerk's office," and that the problem was compounded by the fact that he was in lockdown for most of the day. As he explained:

> defendant is housed in a twenty-three hour a day lockdown environ-
> ment. There are roughly one-hundred eighty prisoners housed in this
> cell block, and there is one (1) electronic law library for the entire
> cell block. Prisoners are placed on a waiting list to utilize this law
> library, and afforded, at the most, two visits per month at one hour

per visit. I would like to point out that as the law library is
electronic this requires one to use a computer. So far, in three visits
I have managed to log on three times, and crash the system one of
those times. I am not computer literate.

(Docket No. 39).[2] On July 25, 2011, Nolan was given an additional 60 days, until

September 26, 2011, to respond to the Court's request for information. (See Docket

Entry 7/25/11).

On September 1, 2011, Nolan submitted another handwritten letter to the Court,

which was much less articulate than the first. (Docket No. 41). In this letter, he stated

"[t]he people here gave me this paper for you on the time issue and they still don't give

me what I ask for you." (Id. at 1). He asked for counsel to be appointed to assist him, or

for another extension if he needed one. (Id. at 3). According to the "Inmate History"

attached to his letter, during the one year statute of limitations period Nolan was trans-

ferred a number of times among different federal facilities. (Docket No. 41-1) He was

also hospitalized a number times for periods ranging from a day to one week. (Id.)

According to Nolan, these transfers caused delays in his receipt of information and made

it more difficult for him to obtain information. (Docket No. 41 at 1-2). He also stressed

the fact that he does not know the law. (Id. at 4). Nolan never expressly addressed when

he mailed the habeas petition.

---

[2] This letter is much more legible and well written than Nolan's later communication
(Docket No. 41), and this court questions whether they were written by the same person.

## The Date of Filing

As detailed above, Nolan's habeas petition and supporting memoranda are dated April 28, 2010, yet they were not docketed with the Court until July 29, 2010. Based on the present record, it is impossible to determine what caused the delay. In adopting the "prisoner mailbox rule," the Supreme Court expected that setting the date the prisoner handed the filing over to prison authorities for mailing as the filing date would eliminate disputes because, *inter alia*, the prisoner would know the date he submitted the mail and the prison authorities "have well-developed procedures for recording the date and time at which they receive papers for mailing and . . . can readily dispute a prisoner's assertions that he delivered the paper on a different date." Houston v Lack, 487 U.S. 266, 271-72, 275, 108 S. Ct. 2379, 2383, 2384-85, 101 L. Ed. 2d 25 (1988). The Supreme Court anticipated that "[b]ecause a reference to prison mail logs will generally be a straight-forward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one. Relying on the date of receipt, by contrast, raises such difficult to resolve questions as whether delays by the United States Postal Service constituted excusable neglect and whether a notice stamped 'filed' on one date was actually received earlier." Id. at 275, 108 S. Ct. at 2385. In short, the Court anticipated that given the mail logs kept by prisons, the prison would be better able to determine the cause for delay, as opposed to "the prisoner confined to his cell, who can usually not guess whether the prison authorities, the Postal Service, or the court clerk is to blame for any delay." Id. at 276, 108 S. Ct. at 2385.

Unfortunately, in the instant case, neither of the parties seems to have the clear-cut evidence the Supreme Court anticipated. The prison authorities have not submitted anything indicating that a mail log existed or any other evidence indicating that Nolan did not mail the petition at or around the time it was dated. For his part, Nolan did not seem to understand this court's inquiry. First, he wrote of trying to get records from the clerk's office, then he indicated he did not get "the papers" he needed from prison authorities. His second letter to the court is not clearly written. Nolan never provides a certification of mailing as provided for in Rule 3(d) governing Habeas Proceedings. On the other hand, there is nothing in the record which provides a reason why Nolan would delay mailing a completed petition and memorandum for months.

Courts often use the date the petition is dated and signed as the date of filing under the mailbox rule. See Herbert v. Dickhaut, 724 F. Supp. 2d 132, 136 (D. Mass. 2010) (collecting cases).[3] In the instant case, this court recommends accepting the petition as timely based on the date it was signed, and proceeding with the merits of the petition which, as described below, are straightforward. See Ramos-Martinez v. United States, 638 F.3d 315, 324 (1st Cir. 2011) (recognizing that court may in appropriate cases take a "pragmatic approach" and go directly to the merits and "avoid addressing an enigmatic threshold issue" such as equitable tolling).

---

[3] Admittedly, none of these cases involved as lengthy a discrepancy between the date signed and the date received by the court. However, where there is proof of mailing, courts have applied the prisoner mailbox rule even if the petition is never received by the court. See Herbert, 724 F. Supp. 2d at 137-38.

**Equitable Tolling**

If the petition is not found to have been mailed in a timely manner, the next question is whether equity calls for the filing period to be extended for 44 days. This court finds that equitable tolling is not applicable here.

The one-year limitations period found in § 2255(f) "is subject to equitable tolling in appropriate circumstances." Ramos-Martinez, 638 F.3d at 322. "A court's power to invoke equitable tolling must be exercised case by case." Id. (citing Holland v. Florida, 130 S. Ct. 2549, 2563, 177 L. Ed. 2d 130 (2010)). The burden is on the petitioner to establish the basis for equitable tolling. Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010). To meet this burden the habeas petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland, 130 S. Ct. at 2563 (internal quotation omitted). Equitable tolling is rarely invoked and is "reserved for cases in which circumstances beyond the litigant's control have prevented him from promptly filing." Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002).

In the instant case, Nolan has not established that there was any extraordinary circumstance that prevented him from filing his petition in a timely manner. While Nolan complains about moving around and being in lockup, he nevertheless apparently had the petition completed in a timely manner. Moreover, according to the records filed by Nolan, he was in the same facility, without any trips to the hospital, from February 24, 2010, through the filing deadline of June 15, 2010, until June 29, 2010. (Docket No. 41-

1).  "[P]rison transfers and isolation due to lockdowns . . . and the like" are not, in and of themselves, sufficient to excuse a failure to file the habeas petition in a timely manner. Ramos-Martinez, 638 F.3d at 324 (citing Atkins v. United States, 204 F.3d 1086, 1089-90 (11th Cir. 2001)).  Similarly, "[i]gnorance of the law alone, even for incarcerated *pro se* prisoners, does not excuse an untimely filing."  Lattimore v. Dubois, 311 F.3d 46, 55 (1st Cir. 2002).  Nolan simply has not put forward any facts to support the conclusion that the extraordinary relief of equitable tolling is warranted in the instant case.

### B.   Claims of Ineffective Assistance of Counsel

Addressing the merits of the habeas petition, Nolan has raised a number of claims of ineffective assistance of counsel, relating to counsel's actions both at the trial and appellate levels.  Nolan's claims will be liberally construed as he is proceeding *pro se.* Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990) (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976)).  Nevertheless, as detailed infra, this court recommends that his claims be dismissed.

### 1.   General Standards

"Habeas Corpus relief under 28 U.S.C. § 2255 is available to vacate a sentence where (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the sentencing court was without jurisdiction; (3) the sentence exceeded the maximum permitted by law; or (4) the sentence is otherwise subject to collateral attack." Ryan v. United States, 97 F. Supp. 2d 190, 192 (D. Mass. 2000).  The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief.

United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978). As detailed below, Nolan

has not met his burden.

Claims of ineffective assistance of counsel may be brought under 28 U.S.C.

§ 2255, "whether or not the petitioner could have raised the claim on direct appeal."

Massaro v. United States, 538 U.S. 500, 504, 123 S. Ct. 1690, 1694, 155 L. Ed. 2d 714

(2003). Claims of ineffective assistance of counsel are reviewed under the two part test

set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674

(1984). As the Strickland court held, to establish a claim of ineffective assistance of

counsel:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable. Unless
> defendant makes both showings, it cannot be said that the conviction
> ... resulted from a breakdown in the adversary process that renders
> the result unreliable.

Id. at 687, 104 S. Ct. at 2064. With regards to the deficient performance prong of the

analysis, "there is a 'strong presumption' that counsel's strategy and tactics fall 'within

the range of reasonable professional assistance,' and courts should avoid second-guessing

counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st

Cir. 2006) (quoting Strickland, 466 U.S. at 689, 104 S. Ct. at 2065). "It is only where,

given the facts known at the time, counsel's choice was so patently unreasonable that no

competent attorney would have made it, that the ineffective assistance prong is satisfied." Id. (quotation marks and citation omitted).

"Under the prejudice prong, not all errors by counsel are sufficient to meet the standard of reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." Id. The probability must be "sufficient to undermine confidence in the outcome," and the burden is a "heavy" and "highly demanding" one. Id. (internal quotation marks and citations omitted). "A defendant's failure to satisfy one prong of the Strickland analysis obviates the need for a court to consider the remaining prong." Id. The petitioner bears the burden of proof, by a preponderance of the evidence on both prongs of the Strickland test. Scarpa v. Dubois, 38 F.3d 1, 9 (1st Cir. 1994). Each of Nolan's claims of ineffective assistance of counsel will be discussed in order.

### 2.     Objection to Restitution Order

Nolan contends that his trial counsel was ineffective for failure to raise and/or object to arguments raised by the government concerning 18 U.S.C. § 2113(a) and (d), the bank robbery statutes. (See Def. Mem. (Docket No. 32) at 3). Several of these arguments relate to the order that Nolan pay restitution in the full amount he robbed from the banks. These arguments are without merit.

First, Nolan challenges his counsel's failure to object to the order of the Court "to pay full restitution payments on both banks." (Id.). While the basis of this objection is unclear, this court notes that the Mandatory Victims Restitution Act authorizes orders of

restitution to the victim in cases involving a "crime of violence" or "an offense against property[.]"  See 18 U.S.C. § 3663A(c)(1).  An award of restitution was appropriate under the statute in the instant case, so the failure of counsel to object cannot constitute ineffective assistance of counsel.

Nolan next appears to be arguing that the bank robbery statute is an unconstitutional exercise of Congress's authority under the commerce clause.[4]  This argument has been repeatedly rejected by the courts which have addressed such claims.  See, e.g., United States v. Lee, 439 U.S. 381, 386 (7th Cir. 2006) ("All federally-insured banks operate in and affect interstate commerce"); United States v. Robinson, 389 F.3d 582, 593 (6th Cir. 2004) (court rejects argument, which is "popular with defendants these days[,]" that the bank robbery statute exceeds Congress's power under the Commerce Clause) (citations omitted); United States v. Watts, 256 F.3d 630, 634 (7th Cir. 2001) ("at the very least, the FDIC-insured financial institutions are instrumentalities and channels of interstate commerce and their protection from robbery is well within Congress's Commerce Clause power"); United States v. Harris, 108 F.3d 1107, 1108-09 (9th Cir. 1997) (federally insured "financial institutions are instrumentalities and channels of interstate commerce and their regulation is well within Congress's Commerce Clause power").  See generally United States v. Spinello, 265 F.3d 150, 154-58 (3rd Cir. 2001),

---

[4]  Given the conclusory nature of Nolan's argument, this court's analysis will also be brief and will not contain the nuanced analysis that a commerce clause objection can engender.

and cases cited.  Nolan has not cited any contradictory holdings and this court finds the analyses of the courts finding no constitutional violation to be persuasive.

Briefly, there are "three broad categories of activity that Congress may regulate under its commerce power" namely (1) "Congress may regulate the use of the channels of interstate commerce[,]" (2) "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities[,]" and (3) Congress may "regulate those activities having a substantial relation to interstate commerce, i.e., those activities that substantially affect interstate commerce[.]"  United States v. Lopez, 514 U.S. 549, 558-59, 115 S. Ct. 1624, 1629-30, 131 L. Ed. 2d 626 (1995) (internal citations omitted).  With respect to the third category, as a general statement, "[w]here economic activity substantially affects interstate commerce, legislation regulating that activity will be sustained."  Id. at 560, 115 S. Ct. at 1630.  Thus, the cases in which the Supreme Court has "sustained federal regulation of intrastate activity based upon the activity's effects on interstate commerce, the activity in question has been some sort of economic endeavor."  United States v. Morrison, 529 U.S. 598, 611, 120 S. Ct. 1740, 1750, 146 L. Ed. 2d 658 (2000).  Moreover, the Court looks to whether the statute has a "jurisdictional element [that] may establish that the enactment is in pursuance of Congress' regulation of interstate commerce."  Id. at 612, 120 S. Ct. at 1751.

In the instant case, in addition to the economic nature of the crime, the bank robbery statute to which Nolan pleaded guilty contains a jurisdictional element which

requires that the bank in question either be a member of the Federal Reserve System, or insured by the Federal Deposit Insurance Corporation ("FDIC").  <u>See</u> 18 U.S.C. § 2113(f) (defining "bank" for purposes of the statute).  This satisfies the requirement that the regulated activity affect interstate commerce, and the enactment of the bank robbery statute was within Congress' power under the commerce clause.  <u>See</u> <u>Spinello</u>, 265 F.3d at 155-56, n.4 (not only does § 2113 regulate economic activity, but it contains a jurisdictional element making it within the authority of Congress to enact).  Finally, Nolan seems to be arguing that the jurisdictional element of 18 U.S.C. § 2113 is invalid because the FDIC was created pursuant to statute (<u>see</u> 12 U.S.C. § 1811) enacted under a different clause of the Constitution (U.S. Const. art 1, § 8, cl. 4), and that "the FDIC cannot be mingled with" the Commerce Clause so as to create a constitutional statute. (<u>See</u> Def. Mem. at 4-5).  However, "the connection between interstate commerce and the federally-insured status of banks" has long been recognized, and, in fact, served as a basis for the "system of federal insurance for the deposits of banks[.]"  <u>Spinello</u>, 265 F.3d at 157 (citations omitted).  "Congress created the FDIC to keep open the channels of trade and commercial exchange" and "FDIC-insured banks are fundamental to the conduct of interstate commerce."  <u>Id.</u> at 158 (internal quotations omitted).  There is no basis for Nolan's contention that Congress violated the commerce clause by making it unlawful to rob federally insured banks.

Since the bank robbery statute is constitutional, it was not ineffective assistance of counsel for defense counsel to fail to challenge the statute's constitutionality.

### 3.    "Failures as to 18 U.S.C. Section 201"

The next section of Nolan's memorandum is entitled "failures as to 18 U.S.C. section 201." That statute, entitled "bribery of public officials and witnesses," makes it "unlawful to offer or give anything of value for or because of testimony in a trial." United States v. Anty, 203 F.3d 305, 308 (4th Cir. 2000) (cited by the defendant). See 18 U.S.C. § 201(c)(2). While the gist of Nolan's argument is unclear, to the extent that he is challenging his counsel's failure to raise any claim under this statute, his claim of ineffective assistance must fail. As an initial matter, by now it is well established "that 18 U.S.C. § 201(c)(2) does not bar the government from promising leniency or the like to government witnesses." United States v. Lara, 181 F.3d 183, 198 (1st Cir. 1999). See also United States v. Levenite, 277 F.3d 454, 461 (4th Cir. 2002) (cited by the defendant) ("§ 201(c) 'does not prohibit the United States from acting in accordance with long-standing practice and statutory authority to pay fees, expenses, and rewards to informants ....'") (quoting Anty, 203 F.3d at 311); United States v. Singleton, 165 F.3d 1297, 1301-02 (10th Cir. 1999) (§ 201(c)(2) does not apply to the government). Even more significantly in the instant case, however, since Nolan pled guilty, there were no government witnesses against him. Therefore, the statute is inapplicable to Nolan's case and trial counsel was not ineffective for failing to raise any challenge based on the statute.

### 4.    Actions of Appellate Counsel

Nolan next contends that his appellate counsel was ineffective due to his failure to raise issues relating to trial counsel's lack of objections relative to 18 U.S.C. §§ 201(c)(2)

and (3),[5] as well as the "error" concerning supervised release.  (Def. Mem. at 8).  As detailed above, 18 U.S.C. § 201 has no application to Nolan's case.  While Nolan does not explain the alleged error relating to supervised release, the government "speculates" that Nolan may be referring to the fact that his plea agreement called for five years of supervised release, but the maximum allowed by law was three years.  (See Gov't Response to § 2255 Motion (Docket No. 36) at 13 n.5).  However, since the trial judge rejected the plea agreement and only sentenced Nolan to three years of supervised release following his period of incarceration, there was no error to raise on appeal.

In sum, this court cannot "speculate" as to the basis for the petitioner's claim, and Nolan has not established that appellate counsel committed any error, much less provided ineffective assistance on appeal.  Therefore, this claim should be dismissed as well.

### C.    Claims of Prosecutorial Misconduct

Nolan next contends that the "AUSA committed intentional misconduct in violation of the Fifth Amendment."  (Def. Mem. at 8).  Specifically Nolan contends that the AUSA "intentionally committed misconduct during trial and during sentencing day" and "withheld critical and valuable information[.]"  (Def. Mem. at 9).  Since there was no trial, however, the government could not have committed wrongful acts during trial.  Moreover, Nolan has failed to state a claim of reversible error during sentencing.  He never identifies the

---

[5]  Section 201(c)(2) prohibits the payment of witnesses, while § 201(c)(1)(B) prohibits a public official from accepting payments personally for testimony.  Neither is applicable in the instant case because they do not apply to the government, and there were no witnesses against Nolan.

information that was allegedly withheld.  Nor does he explain how the withholding of such information violated his constitutional rights.  Issues raised in such a perfunctory manner are deemed waived.  See Cody v. United States, 249 F.3d 47, 53 n.4 (1st Cir. 2001), and cases cited.  This argument cannot form the basis for habeas relief.

Nolan next argues that the government violated 18 U.S.C. § 201.  (Def. Mem. at 9).  As detailed above, that statute has no application in the instant case and there was no error.  Nolan's final argument appears to be a repetition of his contention that the bank robbery statute is an unconstitutional violation of the Commerce Clause, and that the AUSA should have known of this infirmity.  (See Def. Mem. at 10 ("the AUSA is a trained attorney so is likely that he knows that Article 1, section 8, clauses 3 and 4 cannot be mixed with violating due process of the law")).  As detailed above, the petitioner has failed to establish that the statute is unconstitutional so there was no unlawful conduct on the part of the AUSA.  For these reasons, Nolan's claims of prosecutorial misconduct must fail.

In sum, considering the merits of all of Nolan's claims, his petition for habeas relief should be denied.

### D.      Appointment of Counsel

In his last letter to the Court, Nolan requested that counsel be appointed to assist him in pursuing his § 2255 petition.  (Docket No. 41).  "A convicted criminal has no constitutional right to counsel with respect to habeas proceedings[,]" and that includes habeas petitions raising claims of ineffective assistance of counsel.  Ellis v. United States, 313 F.3d 636, 652 (1st Cir. 2002).  Nevertheless, the Court has the discretion to appoint

counsel for an indigent litigant in "exceptional circumstances[.]" <u>Cookish v. Cunningham</u>, 787 F.2d 1, 2 (1st Cir. 1986). "Some factors which courts have found to bear on the question of exceptional circumstances in a particular case include the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim, the complexity of the factual and legal issues involved, and the capability of the indigent litigant to present the case." <u>Id.</u> at 3 (internal citations omitted). <u>See</u> <u>also</u> <u>United States v. Mala</u>, 7 F.3d 1058, 1063-64 (1st Cir. 1993) (because the indigent litigant "showed a fair likelihood of success" on his constitutional claim, the constitutional claim was "factually complex and legally intricate," and the prisoner was "severely hampered" in his ability to investigate the factual and legal issues, case presented "the rare section 2255 case in which the appointment of counsel is warranted."). Applying these principles to the instant case compels the conclusion that the appointment of counsel is not warranted.

Nolan's case is not factually or legally complex. There are transcripts of the plea and sentencing hearings available, and the factual record is straightforward. No further investigation is necessary. With respect to the legal claims raised, they are all also straight-forward. Thus, Nolan's challenge to the constitutionality of the bank robbery statute can be assessed by this Court without the assistance of counsel. Similarly, the Court can address the legal issues raised concerning the applicability of 18 U.S.C. § 201 to the instant dispute. The record is sufficient for the Court to determine if the government engaged in prosecutorial misconduct. This is not an exceptional case which would benefit from the appointment of counsel.

## E.    No Hearing is Needed

Finally, this Court agrees with the government that no evidentiary hearing is necessary in the instant case.  No hearing is required "when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.  In other words, a § 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible."  United States v. McGill, 11 F.3d 223, 225-26 (1st Cir. 1993) (internal quotations and citations omitted). The burden is on the petitioner to establish the need for an evidentiary hearing.  Id. at 225.

In the instant case, because Nolan's allegations assert conclusions and not facts, and are contradicted by the record, there is no need for an evidentiary hearing.  "Under the circumstances reflected by the instant record, an evidentiary hearing would have served no useful purpose."  Id. at 226.

## IV.  CONCLUSION

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Nolan's motion seeking to vacate, set aside, or correct his sentence (Docket No. 31) be DENIED.[6]

---

[6]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed

/ s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge

---

findings, recommendations or report to which objection is made and the basis for such objections.
The parties are further advised that the United States Court of Appeals for this Circuit has
repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.
See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988);  United
States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986);  Park Motor Mart, Inc. v. Ford Motor
Co., 616 F.2d 603, 604-605 (1st Cir. 1980);  United States v. Vega, 678 F.2d 376, 378-79 (1st
Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983);  see also Thomas v. Arn, 474
U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth
Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999);  Henley Drilling Co. v. McGee, 36 F.3d 143,
150-51 (1st Cir. 1994);  Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).